Mr. Dickerson, let me apologize in advance if I'm coughing. It's not because of anything you've done, but I have a cough drop, so I appreciate that, Judge. Good morning, Your Honors. May it please the Court. Congress has determined that an individual may contribute $2,700 to a candidate in a primary election, and that if that candidate survives to the general election, that that individual may contribute a total of $5,400. Our case simply asks how it can be more corrupting to give that same $5,400 at that later point. This is a question that has never been addressed by any court, and the Supreme Court, just last month, in a unanimous decision, issued its ruling in Shapiro v. McManus, which disposes of this appeal and clarifies two important points. First— I was actually wondering why neither you nor your opposing counsel filed a 28-J letter advising us about Shapiro, and I think all of us know about it, but— I was actually in ECF about to hit send when Your Honors' order came through. Ah, okay. It was a moment of some celebration in the office. To clarify those two points, first, following up on Brett Pack and CalMet, the Court made it quite clear that when discussing the jurisdiction of the courts, Congress's clear statutory language must be given effect. In Justice in Shapiro, the statutory language here is, quote, unambiguous, and, quote, admits of no exception. That language is, the district court immediately shall certify all questions of constitutionality of the act to the United States Court of Appeals for the circuit involved, which will hear the matter sitting en banc. Just as was the case of the three-judge provision at issue in Shapiro, the mandatory shall normally creates an obligation impervious to judicial discretion, such as the case here. Second, the Court explicitly addressed the FEC's claim in this case that special review provisions need not be provided if a claim is insubstantial. But for that purpose, the Court could not have been clearer. The insubstantiality at issue is not a merits determination. It simply addresses the possibility that a claim is so frivolous that, quote, the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts. For purposes of this, to take the phrase from the Supreme Court, constitutional insubstantiality. Certification is appropriate unless a case fails to raise a substantial claim for jurisdictional purposes. And that standard has been equated to, again quoting, essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit. And the adverbs were no mere throwaways. The limiting words wholly and obviously have cogent legal significance. If anything, Shapiro applies with more force in this context. Recall that in Shapiro, the underlying statute actually had language suggesting there would be cases where a single district court would decide that a three-judge court was not, in fact, necessary. No similar exception is present here. In essence, the issue is simply that Shapiro is black-letter law. Shapiro, if anything, determines that several of the authorities relied on by the FEC are no longer good law. And since there's no question that the courts do have jurisdiction to overhear this case, and because the only forum for the hearing of such a case is this court sitting on bonk, that is enough. I think there's no question that had Shapiro come down at the time the district court was considering whether to recertify the questions, that she's likely to have done so for two reasons. One, the district court, I think, can be trusted to realize when she lacks jurisdiction over the matter in general. And second, she had, in fact, certified it previously. And finally, I think it's important to note that we're here on a grant of summary judgment. Shapiro, again, was a decision about whether or not one could reach the merits under a 12b-6 standard. If that lower standard is not acceptable, if, in fact, there is no jurisdiction to reach 12b-6, then how much more so to reach summary judgment? If Your Honors have no questions on that matter, I would address just two quick points. The first is that I think there has been some confusion as to the as-applied nature of our claim. I'd like to very briefly address that. It is as-applied in two senses. One, it only applies to an individual who is not given in the primary but wishes to give in the general election. I think there was some confusion in the record on this. If we were to prevail, the remedy would not be that there's a change in the contribution limit of the primary election standard or at any other stage of litigation. What would happen is that during the primary election, the contribution limit would remain $2,700, and once one knew who had advanced to the general election, the contribution limit would be the aggregate amount that Congress had approved between that individual and that candidate. There's been discussions of other special situations, such as the way Louisiana picks its congressman, where you will have a single election, and if someone gets a majority, that person is seated. We're not suggesting the contribution limit in that single election is $5,400. What we're suggesting is that the contribution limit in that election is $2,700 precisely because you don't know if there's a runoff election. If there's a runoff election under our theory, then the contribution limit in that runoff and that runoff only would be $5,400. This is as-applied because the statute defines election very broadly, to include primaries, to include generals, to include runoffs, and various other sorts of ways of picking candidates. And since we're not asking this Court to draw a line to the word election in the contribution limit, we're merely asking for as-applied relief in these particular circumstances of a contributor who is not given in the primary and wishes to give in the general. And finally, there's also been the suggestion that, in fact, the FEC's regulation, which permits the taking of unspent primary funds in their spending in the general election, is the real center of this case. We disagree on two points. One, we take the FEC at its word that its regulation is, in fact, a fair representation of the statute. And two, I would direct your honors to 52 U.S.C. 30114, which governs when monies that are given can, in fact, be spent, and subparts one is for otherwise authorized expenditures in connection with the campaign for federal office of the candidate or individual. That language seems to suggest, one, because it's not limited by election as contribution limits are, that, in fact, money can be used in the context of the same campaign. So I think that argument is a little bit of a red herring. If your honors have no questions. Why don't you reserve the rest of your time. I have a question. The argument that you make with respect to giving of a, you said 5,400. Is that what it is now? Yes, it's been indexed to inflation. Right, okay. If you give one day after the primary, you can't give 5,200. If you give it one day before, you can essentially give 5,200. And if you earmark it, then it has to be to retire expenses that occurred during the primary election. If it's given after the primary, correct. After the primary. But that lack of symmetry that you point out stems from the regulations, not the statute. And you argue it that way on pages 32 to 33 of your brief. So the question I guess I have is when we've had cases that challenge only commission regulations, they're treated not in the way that they designate and go to the in-bank court. They're treated as a regular case. The district court decides and it comes up to us and then it's just a regular three-judge panel. So why should that portion of your argument be treated any differently than the usual mine run case dealing with regulators? Well, I think there's two responses, Your Honor. One is that the disproportionality there doesn't affect our First Amendment claim, only our Fifth Amendment claim. I'm only talking about the Fifth Amendment. And to that point, first, I think we do argue that it is required by the statute, in the sense that the contribution limit is limited by the amount that you can get. Where do you argue that? I couldn't find it. Maybe I could bring that up on rebuttal. But the larger point is that it's not really the regulation that's harming us, because the regulation is, in fact, congruent with congressional intent for the reason and for the statute that I just read out. And finally, there's a suggestion in – I point, Your Honor, to the footnote that's been cited several times in CalMet, where one of the suggestions is, to the extent that we're worried about this procedure being misused, the standard doctrines of constitutional avoidance are in play. I think if this were a case where relief was available – Well, I'm more concerned about the jurisdiction question. And I thought your response would be, well, there's pendant jurisdiction. When the district court certifies the case of the issues to the in-bank court, that there be pendant jurisdiction over this interrelated claim dealing with the regulations. Which – but that argument, I didn't find that argument. Do you agree? And I don't think that is our argument, with candor, Your Honor. I think our argument is that the – as was seen in the L&C case, that the duty of the district court is to find and certify the constitutional questions. To the extent – and again, we disagree with the merits claim that the regulation is the cause of our injury. If that were the view on the Fifth Amendment claim, that might affect the outcome of this appeal, but would not touch the First Amendment claim. Can I – let's see if I understand. On the Fifth Amendment, your argument is that the statute is what causes your problem, and it's unconstitutional, correct? Yes. So if, in fact, we were looking at it and we thought it was actually the regulation that was causing your problem, and we had already accepted it for en banc, you would simply lose because the en banc court doesn't have jurisdiction over the regulatory question, and you would have to go back and file in the district court if you wanted to still challenge the regulation. Is that right? Yes. If we wanted to – I think that is correct. I mean, we're all sort of dealing with new law here. But yes, I think it's correct that to the extent the regulation is the issue, that is an APA claim. So then the only question for us is, is it frivolous – there's a shorthand for all the other words in Shapiro – for you to argue that it is the statute rather than the regulation that is causing the problem? Right? That's the issue before us on this Fifth Amendment issue. Is it frivolous to argue that it is the statute rather than the regulation? I think that's correct. And again, in the sense that the statute says monies that are given may be spent throughout the campaign of the individual, not the election of the individual, the regulation is – Your view is that the regulation is consistent with the statute, just clarifies it, and is generated by the statute? Precisely. And we will have to decide that question en banc if we take the case en banc. I think that's exactly right. Okay. Perfect question. Okay, thank you. Then I would reserve the balance. Thank you. Thank you. Erin Klopach for the Federal Election Commission. May it please the Court. The appellants asked the Court below to certify whether they have a constitutional right to make $5,200 double-the-limit general election contributions to certain candidates in 2014. The District Court properly declined to certify that question, which is wholly insubstantial because it has already clearly been decided by the Supreme Court. In Buckley, the Supreme – Can I just pause for a minute? Sure. Since neither of you provided us with the information about Shapiro. Okay. Do you agree that the standard established for the three-judge court in Shapiro is the same as the standard for us? We agree that it's analogous and that it's – I know you used the word analogous in your letter, but what else could it be? It is a question of jurisdiction – of interpreting the word shall. The Supreme Court said this is really only – the only way you get out is if it's jurisdictionally insufficient. And the only way that gets out is, as the opposing counsel says, essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit. And the Commission does not dispute that that standard is applicable in this context. Yes, it's not. Shapiro did deal with a different statute, Section 2284, and there are some differences, including the district court's fact-finding role under Section 30110, which governs this case. But there is no dispute that the standard for determining insubstantiality articulated in Shapiro is applicable here. And the district court, deciding before Shapiro, analogized it to, I think, a Ninth Circuit case or something that actually applied 12b-6 rule. And that's obviously wrong because Shapiro expressly rejected that test. We agree that the 12b-6 standard is wrong. But I will say, you know, I think a number of cases before Shapiro used different articulations of what the standard is. But one consistent theme in all those cases, even when they talk about 12b-6 or sometimes talk about summary judgment, was there was agreement that a case, whatever the standard may be, a case that is settled by the Supreme Court, where a legal issue is settled by the Supreme Court, that those cases are insubstantial. And Shapiro confirms that that standard remains the standard and continues to illuminate what wholly insubstantial means. So in the Shapiro case, the court clarified that wholly insubstantial means lack of federal question and lack of jurisdiction. And it characterized it as a jurisdictional rather than a merits determination. But rather than redefining the phrase wholly insubstantial, what the Supreme Court in Shapiro did was embrace a series of earlier Supreme Court precedents dating back, I think, as far as 1910, all of which confirmed that a legal issue that is settled by the Supreme Court is indeed wholly insubstantial. And just a few of those cases... But it depends on what we mean by the words wholly settled by the Supreme Court. That is, if the Supreme Court had decided the case that they're arguing here, this claim about bifurcation, then, of course, it would be frivolous because we are bound by the Supreme Court. That would be the end of it. Their argument is that this specific issue has not been decided, and so there isn't settled law on this specific issue. Well, if the commission takes issue with the characterization of the statute as being artificially bifurcated, then the court does not need to accept a frivolous, factually inaccurate characterization of a statute or Supreme Court decisions, which is the only thing that the appellants in this case have as the basis for distinguishing their claims from the issues resolved in Buckley. So the district court properly applied, regardless of whether it characterized this decision as a summary judgment decision or a dis- Buckley did not address the specific question they're raising here, which is whether it violates either the First Amendment or the Fifth Amendment to allow unopposed candidates to get the $5,200 amount and opposed candidates only half for each. Well, with respect, the Supreme Court did address that. The Supreme Court held in Buckley that the per-election limit, which is, as counsel has recognized, that is how the statute is laid out by Congress. There is no bifurcated election cycle limit. In Buckley, there were nine certified questions with subparts that the Court of Appeals and Bank and a three-judge court simultaneously considered and decided. And those were the issues that went up to the Supreme Court in Buckley. And I've looked at them. There must be 30 different questions that were, you know, right for decision in the Supreme Court. Not a single one of them even comes close to the issue that's been litigated in this case. And the other thing I did is I went back, because along with Frank Easterbrook and Robert Bork, I was in the Solicitor General's office. We filed a 122-page brief in Buckley, and I went back and looked at it, and this question that is before us now was never addressed, and that was 122 pages. It's a pretty thorough brief, and I don't see it being addressed. The only thing that was being addressed in Buckley was the contribution limits and whether they were constitutional, not the bifurcation that we have here. That's correct, Your Honor. And it's unsurprising that neither Buckley or any case after Buckley addressed the bifurcation issue because there is no bifurcation issue. And I think that's what Buckley and subsequent cases, including the Cutchin, which the appellants have placed a great deal of weight on, made clear. There is no election cycle bifurcated limit. And while appellants have tried to suggest that the fact that the statute defines elections to include runoffs and special elections and other type of contests is not relevant here, it is because what it demonstrates is the erroneous nature of this characterization of bifurcation. If the limit were bifurcated, then you would have a situation in which contests that do involve runoff or special elections, in those circumstances, the limit would be divided and the per-election limits would be lower, and you would have the asymmetry that the appellants claim to be so concerned about. This Court does not have to accept a facially erroneous characterization of the statute where it's not accurate. Is it true, I don't know whether it is, but I've been led to believe that in states, and I don't know how many, when there's no opposition to a candidate, and so a primary wouldn't be needed, but some states have, in fact, enacted laws that call, it's called an unopposed primary. So the candidate has no opposition, and the reason the states are doing that is so that contributors can contribute to that candidate who is unopposed in a so-called primary. Are you aware of that? I'm not aware specifically of that circumstance, but first of all, there are a number of issues with the appellant's attempt to focus on the unopposed. I think Colorado is one of the states. So first of all, there's a question about at what point during a cycle a candidate is deemed to be unopposed, right? Because a candidate could be running for election, and there could have been an opponent who, because of some scandal, suddenly falls out of the race, and then ultimately the candidate's unopposed but wasn't necessarily unopposed throughout the entire candidacy. Even if a candidate is running completely unopposed throughout the entire process, a candidate still has an interest in gaining support so that he is elected, he or she is elected by a substantial number of votes. There's many different reasons why a candidate may want to gain support in a primary, regardless of the extent of opposition. And certainly, even in circumstances where candidates have an opponent, you still may have wide disparities in the level of support between those two candidates, but I don't think anybody would suggest that in such circumstances, the candidate who has a stronger basis of support should have a lower contribution limit. I think the Supreme Court's precedents make quite clear that it's not constitutional to establish limits like that. But I think another important point to point out is that the appellant's own circumstances in this case undermine their attempt to characterize the limit as being artificially bifurcated. They made the conscious choice in this case not to contribute to their favorite candidates in those candidates' primary elections, specifically because they recognize a distinction between primary and general elections, and they made the choice that they did not want to associate with or support those candidates in their primary elections, but they did want to do so in the general. That makes clear that primary and general elections are, indeed, different contests, and the fact that the appellants made the choice to forego their constitutional right to make a contribution in a primary election does not entitle them constitutionally to the right to double the amount of their contributions in the general election. This sounds like a merits argument, though, not a question of whether their argument is so frivolous as to deprive us of jurisdiction. No, but I think what it gets to is that the entire basis of their argument that this is a new novel claim and not something proposed by Buckley is a characterization that if you merely look at the statute, how it's actually written, it completely undermines their characterization. It is not an accurate characterization. The appellants have also attempted to take solace in McCutcheon and suggest that McCutcheon has established some new precedent, some change from Buckley, and supports this notion of there being some sort of $5,200 non-corrupting limit. And McCutcheon says no such thing. The court immediately, in the beginning of the opinion, recognized that during the election cycle in which the appellants wanted to make their contributions, the limits were $2,600 per election, not an election cycle limit. And the court pointed out that it had already upheld those limits as being constitutionally permissible in combating the government's interest in preventing corruption in its appearance. There is just no basis for distinguishing the circumstances in this case from Buckley. And I think if you look at the cases cited in Shapiro, this case is actually a stronger case for finding that the wholly insubstantial standard is met. In Shapiro, the court embraced the ex-party Peresky case, where there had been a challenge to a Massachusetts requirement that car owners carry insurance. And the court referred to holdings regarding other states' insurance carrier requirements as demonstrating that the requirement, the constitutionality of that requirement, had already been upheld and was a settled issue. In the Hanna's Distilling Company case, which was a challenge to a Maryland law taxing tangible property within the state regardless of where the owner of the property was located, the court similarly held that that issue was foreclosed based on prior decisions upholding the right of states to impose such taxes. In the Bailey v. Patterson case, the court found that because it was clearly established that there was no constitutional right to require segregation on common carriers, that issue was a settled issue that was not a substantial federal question that could be litigated. Here, the appellants are challenging the constitutionality of the per-election contribution limit. And as the district court correctly recognized, if you strip away their factually erroneous characterizations of the statute as being artificially bifurcated, which it clearly is not, there is nothing left except a challenge to a statute that the Supreme Court in Buckley has already upheld. I would like to take a moment to address the question that the court raised about the regulation, which the appellants clearly are challenging a regulation. The entire basis of their argument, their equal protection argument, that contributors, excuse me, that candidates have the ability to use money that has been donated to them if they make it to a general election. They can use unspent primary money in their general election. The appellants, first of all, are comparing the rights of contributors to make donations subject to the contribution limits with the rights of candidates on how they spend their contributions, which are not similarly situated parties. But more importantly, to the extent that the appellants are challenging the regulation, a regulation that governs how candidates spend their money cannot possibly cause injury to the candidates themselves. And so even if appellants were challenging the regulation, which they claim they are not, they would lack standing to bring such a challenge. So we don't believe the court even needs to address what type of jurisdiction would apply to such a challenge because they have no standing to bring such a challenge. If there are no further questions, I'll just reiterate that the Federal Election Campaign Act's judicial review provision does not grant plaintiffs a statutory right to have the en banc court of appeals revisit questions that have already clearly been settled by the Supreme Court. The district court in this case correctly recognized that the appellants are simply asserting a constitutional right to make double-the-limit contributions to certain candidates' general election campaigns, and the Supreme Court has already made clear that there is no such right. The decision below is correct. It is consistent with the judicial review provision. Wait a minute. What's your short answer to the, as I understand the plaintiff's claim, is that, look, the Federal Election Commission and Congress itself has recognized that if a single contributor gives $5,400 to a candidate, there's no risk of corruption. So why should it matter whether it's split in two with $2,700 for a primary and $2,700 for a general election? $5,400 is not corrupting. Well, there has never been a holding that $5,400 for a single election is not corrupting. The only basis that the appellants have for making that... is permitted to spend $5,400 from a single contributor on a general election. But the contributions apply to the amount that a particular individual can give to a candidate to win a particular election. As the appellants' own circumstances in this case demonstrate, it is not always the case that a contributor who supports a candidate to win one contest would necessarily support the candidate to win in a second contest. It may be the case that the candidate himself chooses to carry that money over, but you can have situations like the very case that we have before the court here where a contributor made a conscious choice not to support a candidate in connection with one election, but then to support a candidate with another. Contributions are not just money that individuals give to other individuals who happen to be candidates to support them in the abstract. It is to support them win a particular election contest. That is how Congress designed the law, and that is how it is written. And so there is no right to give $5,400 to a candidate in the abstract to win multiple elections. That's not the way the statute is designed. Are there no further questions? Thank you, Your Honor. Thank you. I'd like to start with a phrase, clearly established. I think it's important to note that the only authority the FEC has for claiming that this case is so established, such an established question of law, that we're bringing a frivolous question over which the federal courts have no jurisdiction,  Buckley, as Judge Randolph quite properly points out, simply never had this question briefed, and it was not considered and it was not mentioned. The fact that the per-election limit was upheld does not mean it was upheld as a per-election limit. That question was never presented to the court. A court can uphold under the Eighth Amendment the concept of the death penalty without foreclosing as applied challenges to the means of execution. I take it you would agree that being clearly established is not the only way in which an illegal argument can be frivolous. I think that's correct. I'm correct. Yes. So that you raise a crazy, I'm not saying you did, you raise a crazy argument that has never been decided because no one was crazy enough to raise the argument in the first place, it could still be frivolous. I think that's the essentially fictitious standard under Shapiro. Okay. Let me ask just a fact question. So for your plaintiffs, there was one of them where it was a three-way regional election, right? Open primary in California. Yeah. So that one's really not like what you're talking about here, right? There was opposition in that one. That wasn't, all parties had opposition. Well, I think that that gets to some of the confusion in the case. Yes, that is a correct statement of facts. There were two from one party and one from the other party. That's right. So the one from the other party could have still lost, not made it into the final election. And I think the difficulty here is that the FEC desperately wants this case to be about the primary election, and it isn't about the primary election. It's about the general election, and this is why. My client wanted to make sure that the Republican nominee in the general election was seated, but because there were these contested primaries, was not sure who that nominee would be. On the other hand, the Democratic Party in both cases was quite clear on who the nominee would be. Well, they weren't sure that the Democrat would actually make it out of that multi-party primary, right? I haven't gone into all of the details, but I think the fact in that district that there was one Democrat on the ballot made it pretty likely to be sure. Well, if that's how we're going to decide this, this is going to be a very difficult set of questions for courts in these kind of cases. I think not. Do you want to look at the polls before and see whether the Democrat or the Republican is likely to make it out of the primary? That's my point, Your Honor, is that because my client didn't want to give anything in the primary, it doesn't matter what's going on in the primary. I thought your argument, at least your Fifth Amendment argument, is not fair to have the person who runs unopposed essentially be able to get twice the amount as the person who runs opposed. That's correct, but there's no metaphysical uncertainty there because by the time the general election comes along, you know precisely who's been nominated from the various parties. Right, but your argument about it, you have a footnote in which you try to explain what essentially unopposed is, right? Right. So this sounds a little less metaphysical and more complicated fact deciding. Well, take the example that's been raised, and I see I'm running out of time, but imagine there's a write-in candidate, which is one of the facts that the FCC insisted on on remand. Well, during the primary, you may not know how well that write-in candidate is going to do. I understand that, and if they were trying to say, oh, you want to get $5,400 in the primary based on some probabilistic understanding of who's going to advance the general election, they would have some merit there, but they don't because we're saying by the time the general election comes along, you know precisely how material that write-in candidate was, and usually the answer's going to be not at all. So I think that trying to pretend it's a forward-looking inquiry when it's in fact a backward-looking inquiry is part of where the confusion comes out here. And I just, if I can maybe, with the Court's indulgence, just very quickly add, you know, I think McCutcheon is important, and McCutcheon is important precisely because Buckley did address the aggregate limit, and it did not address the per-election nature of contribution limits. And despite that fact, what the Supreme Court said is, and that case went up on an expedited, one of these special proceedings, just like under Shapiro. What the Court said is because we didn't have any briefing on this question, because we never had an actual full opportunity to consider it, it's new. And that, I think, has to be the standard here as well. Okay. Further questions? Thank you. Thank you very much. We'll take a matter under submission.
judges: Garland, Henderson, Randolph